## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

RONY SANTAMARIA ORELLANA,

    Petitioner,

    v.

NIKITA BAKER,
*in her official capacity as Director of the*
*Baltimore Field Office,*
*U.S. Immigration and Customs Enforcement*,
TODD LYONS,
*in his official capacity as Acting Director of*
*U.S. Immigration and Customs Enforcement*,
KRISTI NOEM,
*in her official capacity as*
*Secretary of Homeland Security*,
U.S. DEPARTMENT OF
HOMELAND SECURITY and
U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,

    Respondents.

Civil Action No. 25-1788-TDC

## MEMORANDUM OPINION

On August 25, 2025, this Court granted a Petition for a Writ of Habeas Corpus filed by Petitioner Rony Santamaria Orellana ("Santamaria Orellana") and ordered his release from immigration detention. On September 10, 2025, only two weeks after Santamaria Orellana was released from custody, he was re-detained by United States Immigration and Customs Enforcement ("ICE"). Santamaria Orellana has now filed a Motion for a Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65(a) in which he again seeks release from custody and also an injunction barring his removal from the United States until after he receives review by an Immigration Judge ("IJ") of whether he has a reasonable fear of persecution or torture if

removed to Mexico. The Court held a hearing on the Motion on September 22, 2025. For the reasons set forth below, the Motion will be GRANTED.

## BACKGROUND

The Court set forth the factual background and procedural history of this case in its August 25, 2025 Memorandum Opinion granting the Petition, which is incorporated here by reference. *See Santamaria Orellana v. Baker*, No. 25-1788-TDC, 2025 WL 2444087, at *1–2 (D. Md. Aug. 25, 2025). In summary, Santamaria Orellana, a native of El Salvador, entered the United States without inspection and was later apprehended and issued an order of removal on June 9, 2006. In September 2008, after he was removed to El Salvador, Santamaria Orellana fled from El Salvador after facing death threats from Salvadoran gangs and entered Mexico unlawfully, only to be detained by Mexican officials and deported back to El Salvador. Later that month, Santamaria Orellana left El Salvador and re-entered the United States.

In November 2019, Santamaria Orellana was arrested by ICE agents, and his 2006 removal order was reinstated pursuant to 8 U.S.C. § 1252(a)(5). After proceedings during which he was found to have a reasonable fear of persecution or torture if removed to El Salvador, Santamaria Orellana was granted bond by an IJ on December 30, 2019, and he was released on January 6, 2020. On April 17, 2023, Santamaria Orellana was granted withholding of removal under the Convention Against Torture ("CAT") by an IJ, who concluded that Santamaria Orellana would more likely than not be subjected to torture with the acquiescence of a public official if removed to El Salvador. He was released after a relative posted a bond.

On June 4, 2025, after appearing at the ICE Field Office in Baltimore, Maryland ("the ICE Baltimore Field Office") for a required check-in visit, Santamaria Orellana was detained and was

later informed that ICE intended to remove him to a third country, Mexico.  On June 5, 2025, he filed the Petition in this case.

In granting the Petition on August 25, 2025, the Court held that Santamaria Orellana's detention violated the Due Process Clause of the Fifth Amendment to the United States Constitution because Respondents failed to comply with their own regulations governing the revocation of release from detention, in violation of principles set forth in *United States ex rel. Accardi v. Shaughnessy* ("*Accardi*"), 347 U.S. 260 (1954).  *Santamaria Orellana*, 2025 WL 2444087, at \*3–8.  Although Respondents complied with the Court's order that Santamaria Orellana be released on August 27, 2025, ICE re-detained him only two weeks later, on September 10, 2025.

On that date, Santamaria Orellana visited the ICE Baltimore Field Office for an interview with a United States Citizenship and Immigration Services ("USCIS") asylum officer on whether he has a reasonable fear of persecution or torture if removed to Mexico ("reasonable fear interview").  Although Santamaria Orellana's attorney accompanied him to the ICE Baltimore Field Office, she was not permitted to be present during the reasonable fear interview.  Santamaria Orellana expressed a fear of persecution and torture if removed to Mexico, in particular because he fears that he will be promptly re-deported to El Salvador in light of his lack of legal immigration status in Mexico.  The USCIS asylum officer, however, concluded that Santamaria Orellana had not demonstrated that it was "more likely than not" that he would be "persecuted or tortured in Mexico."  Third Country Screening Notice at 1, Resp. Notice Ex. 1, ECF No. 31-1.  Santamaria Orellana was then served with a Notice of Revocation of Release signed by an ICE deportation officer on a line designated for Nikita Baker, Field Office Director for the ICE Baltimore Field Office, and was taken into custody.  Santamaria Orellana requested that an IJ review the negative

3

determination made at his reasonable fear interview pursuant to 8 C.F.R. § 1208.31(g). Respondents, however, have stated that they do not intend to grant Santamaria Orellana such IJ review and instead intend to remove Santamaria Orellana to Mexico without further process.

That same day, Santamaria Orellana filed an Emergency Motion for a Temporary Restraining Order and Motion for an Order to Show Cause Why Respondents Should Not Be Held in Contempt, ECF No. 28, in which he sought a temporary restraining order ("TRO") barring his removal from the United States until after he receives the requested IJ review. After a hearing on September 11, 2025, the Court granted the TRO for a period of 14 days. ECF No. 34. Santamaria Orellana then filed the present Motion for a Preliminary Injunction. After the Motion was fully briefed, the Court held a hearing on the Motion on September 22, 2025 and then extended the TRO for an additional 14 days to allow Respondents to identify and produce documents necessary for the resolution of the Motion. ECF No. 42. Because the issues regarding whether Respondents violated the Court's prior order are effectively addressed in relation to the Motion for a Preliminary Injunction, the Motion for an Order to Show Cause will be denied as moot.

**DISCUSSION**

In the present Motion, Santamaria Orellana seeks release from immigration detention on the grounds that his re-detention on September 10, 2025, like his earlier detention on June 4, 2025, violated his due process rights pursuant to *Accardi* because it was effected in violation of regulations intended to provide due process protections. Santamaria Orellana also seeks a preliminary injunction barring his removal until he receives IJ review of the negative determination at his reasonable fear interview.

4

## I.    Re-Detention

Although asserted within a Motion for a Preliminary Injunction, Santamaria Orellana's argument relating to his re-detention is that "[t]he writ of habeas corpus should issue," and that Santamaria Orellana "should be released on supervision." Mot. Prelim. Inj. at 9, ECF No. 36. The Court therefore treats this argument as seeking the re-granting of the Petition rather than preliminary relief on the grounds that Respondents failed to comply with their own regulations relating to re-detention, in violation of Santamaria Orellana's due process rights. In addressing this argument, the Court incorporates by reference its legal analysis in its August 25, 2025 Memorandum Opinion relating to Santamaria Orellana's earlier invocation of this argument in relation to his June 4, 2025 detention. *See Santamaria Orellana*, 2025 WL 2444087, at \*4–8. It also incorporates its analysis and conclusion, directly applicable here, that 8 U.S.C. § 1252(g) does not bar Santamaria Orellana's argument because he challenges not a removal order, but the legality of his present detention. *See id.* at \*3.

As to his September 10, 2025 detention, Santamaria Orellana asserts that after the Court specifically found that Respondents had violated his due process rights by detaining him without complying with applicable regulations governing the revocation of release, 8 C.F.R. § 241.4, Respondents repeated the same due process violation when it re-detained him.  As the Court outlined in greater detail in its Memorandum Opinion granting the Petition, where Santamaria Orellana was on release after he received withholding of removal, his re-detention was governed by 8 U.S.C. § 1231(a)(6) and 8 C.F.R. § 241.4. *Santamaria Orellana*, 2025 WL 2444087, at \*5. The Court held that in detaining Santamaria Orellana on June 4, 2025, Respondents violated the applicable regulations in multiple ways, including by failing to issue any notice of the reasons for the revocation of release, by failing to have an authorized official make the determination to revoke

5

release, and by failing to conduct an informal interview to provide an opportunity to respond to the reasons for revocation. *Id.* at *6–7. The Court also held that where these regulations were intended to provide due process protections, the fact that Respondents failed to comply with these regulations constituted a due process violation pursuant to *Accardi* and *United States v. Morgan*, 193 F.3d 252, 266–67 (4th Cir. 1999). *Santamaria Orellana*, 2025 WL 2444087, at *5–6, *8.

In re-detaining Santamaria Orellana, Respondents addressed some of the prior violations by providing a written Notice of Revocation of Release ("the Notice"), which informed Santamaria Orellana that "there are changed circumstances in your case" in that ICE was "taking steps to remove you to Mexico," Notice at 1, Resp. Notice Ex. 2, ECF No. 31-2, and by providing an informal interview. However, despite a specific determination by the Court that Respondents had failed to have an authorized official make the determination to revoke his release on June 4, 2025, Respondents inexplicably again failed to secure such a determination. As discussed in relation to the grant of the Petition, where, as Respondents acknowledge, the revocation of release was based on 8 C.F.R. § 241.4(*l*)(2), the regulation specifies which ICE officials may revoke release:

> The Executive Associate Commissioner shall have authority, in the exercise of discretion, to revoke release and return to [ICE] custody an alien previously approved for release under the procedures in this section. A district director may also revoke release of an alien when, in the district director's opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner.

*Id.* At present, the position of "Executive Associate Commissioner" refers to an ICE Executive Associate Director, and the position of "district director" includes an ICE Field Office Director. *See* 8 C.F.R. § 1.2; *Ceesay v. Kurzdorfer*, No. 25-CV-0267-LJV, 2025 WL 1284720, at *16 (W.D.N.Y. May 2, 2025) (noting that the reference in 8 C.F.R. § 241.4(*l*)(2) to an "Executive Associate Commissioner" now refers to an "Executive Associate Director of ICE"). Here, the September 10, 2025 Notice was not signed by either an ICE Executive Associate Director or an

6

ICE Field Office Director. Instead, the Notice was signed by "Deportation Officer Jefferson King," purportedly "for" Nikita Baker, the Acting Field Office Director for the ICE Baltimore Field Office. Notice at 1; Opp'n at 2, 4, ECF No. 37. Significantly, Respondents do not claim that Baker actually made the decision to revoke or even that she was aware of this decision. Even if Baker had made the decision, a Field Office Director is authorized to make such a decision only when, in "the [Field Office Director's] opinion, revocation is in the public interest and circumstances do not reasonably permit referral of the case to the Executive Associate [Director]." 8 C.F.R. § 241.4(*l*)(2). There is, however, no documentation or even a claim that Baker or any other Field Office Director made such a determination.

Rather, Respondents' sole argument on why the Notice was properly authorized is the claim that the authority to execute such notices was delegated to ICE deportation officers. Respondents point to two provisions in United States Department of Homeland Security ("DHS") Delegation 7030.2, a general Delegation of Authority to the Assistant Secretary for ICE issued by the Secretary of Homeland Security ("the Secretary") in March 2003, neither of which directly references the authority of an ICE Executive Associate Director to revoke release. In section 2(H), the Secretary broadly delegated to the Assistant Secretary for ICE, now the ICE Director, the authority "to enforce and administer the immigration laws . . . with respect to matters within the jurisdiction of ICE." DHS Delegation 7030.2 § 2(H), Opp'n Ex. 1, ECF No. 37-1. On its face, this provision delegates authorities only to the ICE Director and thus does not support the claim that the authority to revoke release was delegated to ICE deportation officers. The other cited provision, section 4(D)(3), which re-delegates certain authorities to individual ICE officers, does not re-delegate this authority. Section 4(D)(3) provides:

> Immigration Officers. The Assistant Secretary of ICE, the Director of Immigration Interior Enforcement, any Regional or District Director for Interior Enforcement,

7

and any deportation officer, detention enforcement officer, detention officer, special agent, investigative assistant, intelligence agent, immigration agent (investigations), or other immigration officer (as described in section 103 of the INA or 8 C.F.R. 103.1(j)), or senior or supervisory officer of such employee, within ICE, is designated as an immigration officer authorized to exercise, and hereby delegated, the powers and duties of such officer as specified by the immigration laws and chapter 8 of the Code of Federal Regulations.

DHS Delegation 7030.2 § 4(D)(3). Based on its plain language, however, this provision delegates only the authorities of an ordinary "immigration officer," not those of the Executive Associate Director of ICE. *Id.* As another judge in this District has concluded, this provision "indicates that other ICE employees, including high ranking ones, can execute the powers and duties of an immigration officer," but does not "indicate the reverse:  that every immigration officer can execute the powers and duties of the higher-ranking supervisory officials." *Umanzor Chavez v. Noem*, No. SAG-25-01634, 2025 WL 2467640, at *7 (D. Md. Aug. 27, 2025). The Court therefore finds that the Executive Associate Director's authority to revoke release under 8 C.F.R. § 241(*l*)(2) was not properly delegated to ICE deportation officers. *See id.* (rejecting the argument that section 4(D)(3) delegated this authority).   Respondents therefore, once again, violated their own regulations in re-detaining Santamaria Orellana by failing to have the Notice of Revocation of Release approved by a duly authorized ICE official.

Respondents nevertheless argue that the failure to adhere to this regulation does not amount to a due process violation. This Court, however, has already found in its earlier ruling in this case that the identified violations of the requirements of 8 C.F.R. § 241.4, including the requirement that an authorized official approve a Notice of Revocation of Release under 8 C.F.R. § 241.4(*l*)(2), implicate due process. *Santamaria Orellana*, 2025 WL 2444087, at *6–8. This ruling is the law of the case. *See Pepper v. United States*, 562 U.S. 476, 506 (2011) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the

8

same case." (quoting *Arizona v. California*, 460 U.S. 605, 618 (1983))). Indeed, at the first hearing on the Petition, Respondents agreed that these provisions were intended to protect due process rights. 8/18/25 Hr'g Tr. at 82, ECF No. 23. Moreover, several federal courts addressing similar circumstances have held that a failure to adhere to the requirement that an Executive Associate Director or a Field Office Director make the determination to revoke release in compliance with 8 C.F.R. § 241.4 violates due process and thus mandates release. *See Ceesay*, 2025 WL 1284720, at \*17 (holding that a petitioner detained based on a notice of revocation signed by an Assistant Field Office Director, rather than an Executive Associate Director or Field Office Director, was entitled to release "on that basis alone"); *M.S.L. v. Bostock*, No. 25-cv-01204-AA, 2025 WL 2430267, at \*9–10 (D. Or. Aug. 21, 2025) (holding that a petitioner detained based on a notice of revocation signed by a Deputy Field Office Director was entitled to release "on that basis alone"); *see also Rombot v. Souza*, 296 F. Supp. 3d 383, 385, 387–88 (D. Mass. 2017) (finding that ICE violated the petitioner's due process rights by failing to comply with 8 C.F.R. §§ 241.4 and 214.13 in multiple ways, including in that the official who revoked release, even if the equivalent of a district director, never made the required determination that revocation was in the public interest and that the circumstances did not permit referral of the matter to the Executive Associate Director).

Another judge in this District has held that, pursuant to *Accardi*, the revocation of release without the approval of an authorized official, the lack of an informal interview and thus an opportunity to be heard, and the failure to schedule a hearing on the petitioner's fear of removal to Mexico violated 8 C.F.R. §§ 241.4, 241.13, and 208.31 and thus violated due process. *See Cordon-Salguero v. Noem*, No. 25-1626-GLR, Mot. Hr'g Tr. at 35–37 (D. Md. June 23, 2025) (Dkt. No. 21). *But see Umanzor-Chavez*, 2025 WL 2467640, at \*7 (holding that a notice of revocation of

9

release signed by a deportation officer violated 8 C.F.R. § 241.4(*l*)(2), but that the violation did not implicate constitutional concerns).

Respondents' argument that this failure is merely a "procedural misstep" that does not raise "a constitutional issue" is unpersuasive. Opp'n at 5–6 (quoting *Teng v. Mukasey*, 516 F.3d 12, 17 (1st Cir. 2008)). While it is correct that not every technical failure to comply with policies or procedures violates the Constitution, the requirement that an Executive Associate Director make the determination to revoke release—that is, to restrict a person's liberty—is not merely a housekeeping requirement. A statutory or regulatory provision requiring that a decision affecting personal rights be made only by a designated senior official is fairly deemed to be an important procedural safeguard. For example, the fact that the federal wiretap statute, 18 U.S.C. § 2516, requires that any wiretap application must be approved by the Attorney General or by another statutorily designated Department of Justice official has been characterized as a "critical precondition" to any wiretap order consisting of a requirement that "[t]he mature judgment of a particular, responsible Department of Justice official is interposed" before an application is made, and as a means by which "to make doubly sure that the statutory authority be used with restraint." *United States v. Giordano*, 416 U.S. 505, 515–16 (1974) (holding that wiretap evidence must be suppressed when there is a violation of this statutory requirement, such as when approval was given by an Executive Assistant to the Attorney General); *see* 18 U.S.C. § 2516 (presently requiring the approval of a wiretap application by the Attorney General or another official at the level of Deputy Assistant Attorney General or above). Consistent with such reasoning, the requirement that only an ICE Executive Associate Director make a determination to revoke release in the ordinary course ensures that an individual's right to liberty is not restricted without consideration by a senior ICE official exercising mature judgment and thus is fairly deemed to be

10

part of a "procedural framework, designed to insure the fair processing of an action affecting an individual," a violation of which can be deemed to be prejudicial and thus to implicate due process. *Morgan*, 193 F.3d at 267 (quoting *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986)); *see also Rombot*, 296 F. Supp. 3d at 388 (finding that the regulations in 8 C.F.R. § 241.4 were "promulgated to protect a fundamental right derived from the Constitution").

Further, the failure to follow this requirement cannot be characterized as a mere oversight or error in light of the Court's prior ruling, issued only two weeks before Santamaria Orellana's re-detention, which explicitly found that the requirements of 8 C.F.R. § 241.4 implicate due process and that a failure to comply with those requirements, including the requirement of 8 C.F.R. § 241.4(*l*)(2) that a decision to revoke release be made by an Executive Associate Director or other specifically designated official, required release from detention. *See Santamaria Orellana*, 2025 WL 2444087, at *6. Where ICE appears to have made a specific, willful decision to allow individual deportation officers to make determinations on revocations of release without review by a designated senior official, in violation of 8 C.F.R. § 241.4(*l*)(2), to permit such a violation without consequence would undermine and erode the due process protections of this procedural framework.

Thus, Santamaria Orellana has demonstrated that the September 10, 2025 revocation of his release, like the revocation on June 4, 2025, was unlawful in violation of the *Accardi* doctrine and violated his right to due process under the Fifth Amendment. The Court will therefore again order his release. However, where the only violation relates to whether an authorized official made the determination to revoke release under 8 C.F.R. § 241.4(*l*)(2), and where it is not clear that the Court has the full record relating to this issue, the Court will permit Respondents to retain custody

11

of Santamaria Orellana if it can immediately submit evidence demonstrating that such an authorized official made that determination.

## II.    Denial of Immigration Judge Review

Santamaria Orellana also seeks a preliminary injunction barring his removal until he has received IJ review of the USCIS asylum officer's negative determination on whether he has a reasonable fear of persecution or torture if removed to Mexico. To obtain a preliminary injunction, moving parties must establish that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of the equities tips in their favor; and (4) an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The third and fourth factors merge when the Government is the opposing party. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Each of the four factors must be satisfied for the moving party to obtain a preliminary injunction. *See Pashby v. Delia*, 709 F.3d 307, 320–21 (4th Cir. 2013).

### A.    Likelihood of Success on the Merits

On the first prong, Santamaria Orellana argues that he is likely to succeed on the merits of his claim that both as a matter of 8 C.F.R. § 1208.31(g), which he asserts is applicable to him, and as a general matter of due process, he is entitled to IJ review of his assertion that he has a reasonable fear of persecution or torture if removed to Mexico. Respondents dispute that claim but also assert, as a preliminary matter, that Santamaria Orellana's claim fails because this Court lacks jurisdiction to review the claim based on various provisions within 8 U.S.C. § 1252.

#### 1.    8 U.S.C. § 1252

The Court first addresses the threshold issue of whether Santamaria Orellana's claim fails for lack of jurisdiction based on multiple subsections within 8 U.S.C. § 1252.

12

### a.    8 U.S.C. § 1252(g)

First, Respondents invoke 8 U.S.C. § 1252(g), which, as relevant here, provides that:

> Except as provided in this section and notwithstanding any other provision of law .
> . . including section 2241 of Title 28, or any other habeas corpus provision . . . no
> court shall have jurisdiction to hear any cause or claim by or on behalf of any alien
> arising from the decision or action by the Attorney General to commence
> proceedings, adjudicate cases, or execute removal orders against any alien under
> this chapter.

8 U.S.C. § 1252(g); *see Casa De Maryland v. U.S. Dep't of Homeland Security*, 924 F.3d 684, 696

(4th Cir. 2019) (acknowledging that this authority of the Attorney General is presently held by the

Secretary of Homeland Security); *see also Mestanek v. Jaddou*, 93 F.4th 164, 170 (4th Cir. 2024)

(noting that the Homeland Security Act of 2002 largely transferred the Attorney General's

authority over federal immigration laws to the Secretary of Homeland Security). This provision

has been construed narrowly.    In *Reno v. American-Arab Anti-Discrimination Committee*

("*AADC*"), 525 U.S. 471 (1999), the United States Supreme Court held that 8 U.S.C. § 1252(g)

bars judicial review of challenges to only "the three discrete actions" listed in the statute: the

decisions to "*commence* proceedings, *adjudicate* cases, or *execute* removal orders," and that the

provision is "directed against a particular evil: attempts to impose judicial constraints upon

prosecutorial discretion." *Id.* at 482, 485–86 n.9. Thus, it bars only challenges to "the Attorney

General's decision to exercise her discretion to initiate or prosecute these specific stages in the

deportation." *Bowrin v. U.S. Immigr. Naturalization Serv.*, 194 F.3d 483, 488 (4th Cir. 1999). In

*Bowrin*, the petitioner had conceded deportability based on prior convictions and sought relief

from deportation under section 212(c) of the INA, 8 U.S.C. § 1182(c), but such relief was denied

based on the Attorney General's determination that, as a matter of law, recent amendments to

section 212(c) applied retroactively to preclude relief. *Bowrin*, 194 F.3d at 486. Even though the

petitioner would be removed from the country in the absence of relief, the United States Court of

13

Appeals for the Fourth Circuit held that § 1252(g) did not bar district court jurisdiction over a habeas petition challenging this legal interpretation, which did not challenge a discretionary determination to remove him. *Id.* at 488; *see also Abrego Garcia v. Noem*, 777 F. Supp. 3d 501, 515 (D. Md. 2025) (holding that § 1252(g) did not bar judicial review of the legal question of whether the Government exceeded its legal authority in sending the petitioner to El Salvador in violation of 8 U.S.C. § 1231(b)(3)(A)). Accordingly, § 1252(g) "does not apply to agency interpretations of statutes," as such "decisions do not fall into any of the three categories enumerated in § 1252(g)," including the execution of a removal order. *Bowrin*, 194 F.3d at 488. By contrast, the Fourth Circuit held that § 1252(g) properly barred judicial review of the habeas petition in *Mapoy v. Carroll*, 185 F.3d 224 (4th Cir. 1999), in which the petitioner had already pursued review unsuccessfully with the Board of Immigration Appeals ("BIA") and the Fourth Circuit, and the district court was presented with claims that extended beyond pure questions of law, including arguments that the equities favored a stay of deportation and that the petitioner should be released from custody because he was not a flight risk. *Id.* at 226–28, 230.

The principles set forth in *AADC* and *Bowrin* were reaffirmed recently in *Ibarra-Perez v. United States*, ___ F.4th ___, No. 24-631, 2025 WL 2461663 (Aug. 27, 2025), in which under facts similar to those presented here, the plaintiff filed a tort claim against the United States based on the fact that after he received withholding of removal to his native country of Cuba from an IJ, he was subsequently removed to Mexico even though he asserted that he would be subject to threats and extortion in Mexico. *Id.* at *2. The court squarely addressed the question of whether § 1252(g) barred the claim and concluded that it did not because § 1252(g) is a "discretion-protecting provision" that allows a court "to decide 'a purely legal question' that 'does not challenge the [Secretary's] discretionary authority." *Id.* at *6 (quoting *United States v. Hovsepian*,

14

359 F.3d 1144, 1155 (9th Cir. 2004)). The court held that the plaintiff was not challenging the execution of the removal order, which did not refer to Mexico as the country of removal, nor was he challenging ICE's discretionary authority to decide whether and when to execute a removal order. *Id.* at \*6. Rather, he asserted a "purely legal argument[]" that based on 8 U.S.C. § 1231(b)(3), ICE did not have the statutory authority to remove him to Mexico without "having first given him an opportunity to present a "fear-based claim." *Id.* The court therefore found that § 1252(g) did not bar the claim. *Id.* at \*7.

Similarly, Santamaria Orellana's claim does not challenge the Secretary's discretionary authority to execute a removal order but instead raises only a legal question of whether, when a noncitizen with withholding of removal to his native country is subjected to a proposed removal to a third country, the applicable statute and regulations require IJ review of an asylum officer's negative reasonable fear determination. Thus, as in *Ibarra-Perez*, the claim does not challenge the execution of the 2006 removal order at issue, which does not authorize removal to Mexico. 2006 Removal Order at 1, ECF No. 43-1 (authorizing removal to El Salvador). The claim instead advances the argument that as a matter of law, "before [a petitioner] could be removed to a country not named in his removal order, he had due process and statutory rights to present evidence supporting his contention that he would suffer cognizable harm if he were removed to that country." *Ibarra-Perez*, 2025 WL 2461663, at \*7-8 (noting that a reading of § 1252(g) that bars review of such a claim "would entirely insulate from judicial review any post-hearing decision by ICE to remove noncitizens to third countries where they would be in danger of persecution, torture, and even death"). Under *Bowrin* and *Ibarra-Perez*, § 1252(g) does not bar consideration of such a legal challenge. *Bowrin*, 194 F.3d at 490; *Ibarra-Perez*, 2025 WL 2461663, at \*8–9.

15

###### b.      8 U.S.C. § 1252(a)(5) and (b)(9)

Second, Respondents invoke 8 U.S.C § 1252(a)(5) and 8 U.S.C. § 1252(b)(9), which restrict judicial review of orders of removal.  Section 1252(a)(5), entitled "Exclusive means of review" provides in relevant part:  "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter," and specifically provides that the term "judicial review" includes habeas corpus review.  8 U.S.C. § 1252(a)(5).  Section 1252(b)(9), entitled "Consolidation of questions for judicial review," provides in relevant part:

> Judicial review of all questions of law and fact, including interpretations and applications of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9).

Section 1252(a)(5), the narrower of the two provisions, bars district court review of "an order of removal" and thus is not applicable here because Santamaria Orellana is not challenging the removal order originally issued in 2006 and reinstated in 2019.  *See Riley v. Bondi*, 145 S. Ct. 2190, 2201 (2025) (finding that withholding-only proceedings "do not disturb the finality of an otherwise final order of removal").  As to the more expansive § 1252(b)(9), the Supreme Court has cautioned against interpreting the "arising from" language in § 1252(b)(9) in an "extreme way" because "cramming judicial review" of all questions connected to a removal proceeding, such as those relating to prolonged detention or alleged torts during the pendency of removal proceedings, "into the review of final removal orders would be absurd."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 840 (2018) (plurality opinion).  Multiple United States Courts of Appeals have thus held that claims "independent of or collateral to the removal process do not fall within the scope of §

16

1252(b)(9)." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1032 (9th Cir. 2016). For example, in *Torres-Tristan v. Holder*, 656 F.3d 653, 658 (7th Cir. 2011), the court held that where a noncitizen had a final order of removal reinstated and then unsuccessfully sought both a U Visa and a waiver of inadmissible status from USCIS, challenges to the determinations by USCIS were not part of the review of a "final order of removal" under 8 U.S.C. § 1252 because they were "[a]ncillary determinations made outside the context of a removal proceeding." *Id.* at 655, 658. Notably, several circuit courts have found that "claims which cannot be raised in removal proceedings and eventually brought to the court of appeals on a petition for review" do not arise from the removal process and are thus not barred by § 1252(b)(9). *Gicharu v. Carr*, 983 F.3d 13, 16 (1st Cir. 2020); *see J.E.F.M.*, 837 F.3d at 1032 (noting that § 1252(b)(9) did not bar a claim that "could not have been raised before the agency because it arose after a final order of removal and was entered" such that "absent habeas review," the petitioner "would have had no legal avenue to obtain judicial review of this claim"); *Ibarra-Perez*, 2025 WL 2461663, at *9 (finding that because the plaintiff challenged "ICE's actions taken after his removal proceedings before the IJ and BIA had ended," neither § 1252(a)(5) nor § 1252(b)(9) applied).

Here, Santamaria Orellana's claim that he is entitled to IJ review of the USCIS asylum officer's reasonable fear determination before any removal to a third country is independent of and collateral to the final order of removal, as it does not contest in any way the validity of the final removal order. It is also independent of the determination of withholding of removal pursuant to CAT ("CAT withholding") that barred his removal to El Salvador because at the time of that determination, ICE had not yet proposed removal to Mexico, so there was no assessment of whether he had a reasonable fear of such removal. Notably, the Supreme Court has stated that a CAT withholding determination is not a final order of removal and does not merge into a final

17

order of removal, which "encompass[es] only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Nasrallah v. Barr*, 140 S. Ct. 1683, 1691 (2020). Most importantly, Santamaria Orellana's claim arose long after the final order of removal was entered in 2006, after it was reinstated in 2019, and after the CAT withholding determination was made in 2023 and thus could not have been brought through a petition for review with the circuit court, which must be filed "not later than 30 days after the date of the final order of removal." 8 U.S.C § 1252(b)(1). It therefore is not barred by § 1252(b)(9). *See Gicharu*, 983 F.3d at 16; *J.E.F.M.*, 837 F.3d at 1032; *Ibarra-Perez*, 2025 WL 2461663, at *9.

### c. 8 U.S.C. § 1252(a)(4) and FARRA § 2242(d)

Third, Respondents invoke two provisions relating to judicial review of claims under the Convention Against Torture: 8 U.S.C § 1252(a)(4) and section 2242(d) of the Foreign Affairs Reform and Restructuring Act of 1998 ("FARRA § 2242(d)"), Pub. L. No. 105-277, div. G, Title XXII § 2242, 112 Stat. 2681–822 (1998) (codified as a note to 8 U.S.C. § 1231). FARRA § 2242(d), enacted in 1998, states in relevant part that:

> [N]othing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), except as part of the review of a final order of removal pursuant to [8 U.S.C. § 1252].

FARRA § 2242(d). Subsection (a), in turn, provides that: "It shall be the policy of the United States not to . . . effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States." FARRA § 2242(a).

Section 1252(a)(4), enacted in 2005, provides in relevant part: "Notwithstanding any other provision of law . . . including [28 U.S.C. § 2241] . . . a petition for review filed with an

18

appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture . . ." 8 U.S.C. § 1252(a)(4). Section 1252(a)(4) was enacted to clarify, and to be more restrictive than, FARRA § 2242(d) in relation to CAT claims asserted in immigration proceedings. *See Kapoor v. DeMarco*, 132 F.4th 595, 598–99 (2d Cir. 2005) (discussing FARRA § 2242(d) in relation to CAT claims asserted in an extradition proceeding). Accordingly, the Court focuses on 8 U.S.C. § 1252(a)(4).

Here, Santamaria Orellana has CAT withholding in relation to El Salvador and is seeking IJ review of his claim that he has a reasonable fear of removal to Mexico. In the Petition, however, he does not seek review of any determination by an IJ or the BIA pursuant to CAT; rather, he seeks only the opportunity to have an IJ hear his reasonable fear claim that may be based on CAT. The Court therefore does not find that he is seeking judicial review of a claim under CAT for purposes of § 1254(a)(4) or FARRA § 2242(d).

Even if Santamaria Orellana's present claim could be deemed to be such a claim, § 1252(a)(4) "does not expressly strip jurisdiction over [CAT] claims that cannot await a petition for review." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Security*, 950 F.3d 177, 180, 190 (3d Cir. 2020). In *E.O.H.C.*, the petitioners, El Salvadoran nationals, challenged the Government's plan to send them to Mexico while asylum proceedings were pending, in part based on the argument that they would be persecuted there, in violation of CAT. *Id.* at 182. The court found that the claim was not barred by § 1252(a)(4) because it could not await a petition for review, which would be filed and considered only after they were sent to Mexico, in order to afford meaningful review of the claim. *Id.* at 180. Likewise, if Santamaria Orellana cannot present his claim that he is entitled to IJ review of the USCIS asylum officer's negative reasonable fear determination, he will be sent

19

to the exact country to which he alleges a reasonable fear of removal before any judicial review. Indeed, without the requested review and a favorable ruling, he will never have the opportunity to assert a claim under CAT before an IJ or the BIA, so he would never be able to present such a claim through a petition for review.  Section 1252(a)(4) thus does not bar Santamaria Orellana's claim.  *See E.O.H.C.*, 950 F.3d at 180, 190.  In turn, the Court finds that the less restrictive FARRA§ 2242(d) likewise does not bar the claim.

Even if viewed separately, FARRA § 2242(d) does not bar Santamaria Orellana's claim because it does not challenge a determination under CAT but instead contests the lack of due process arising from the inability to have such a claim heard by an IJ.  The Fourth Circuit has drawn this distinction in *Zhenli Ye Gon v. Dyer*, 651 F. App'x 249 (4th Cir. 2016), in which the petitioner sought a stay of extradition under five claims, including that "he should be granted CAT relief because he will be tortured or killed if he is extradited" and that "the State Department's extradition decision deprives him of due process."  *Id.* at 250.  The court affirmed the district court's conclusion that it could not hear the CAT claim that he would be tortured or killed, *see id.* at 251–52 (citing *Mironescu v. Costner*, 480 F.3d 664, 676 (4th Cir. 2007), but found that the district court properly considered the claim that the petitioner was denied due process based on the manner in which his case was reviewed and decided.  *Id.* at 251, 253.  Where Santamaria Orellana does not contest a ruling under CAT on whether he has a reasonable fear of torture but instead advances a procedural due process claim based on the lack of an opportunity to even present a claim for IJ review, the Court finds that FARRA § 2242(d) does not bar his claim.

For these reasons, the Court finds that the identified provisions within 8 U.S.C. § 1252 do not bar Santamaria Orellana's claim.

20

### 2.    8 C.F.R. § 1208.31

On the merits, Santamaria Orellana argues that his right to due process of law has been violated based on Respondents' refusal to comply with the requirements of 8 C.F.R. § 1208.31, which generally provides that an "asylum officer's negative decision regarding reasonable fear shall be subject to de novo review by an immigration judge upon the alien's request." 8 C.F.R. § 1208.31(g). The requirements of 8 C.F.R. § 1208.31 apply to "any alien ordered removed under section 238(b) of the [INA]," 8 U.S.C. § 1228(b), or "any alien . . . whose deportation, exclusion, or removal order is reinstated under section 241(a)(5) of the [INA]," 8 U.S.C. § 1231(a)(5). Pursuant to the latter provision:

> If the [Secretary] finds that an alien has reentered the United States illegally after having been removed or having departed voluntarily, under an order of removal, the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry.

8 U.S.C. § 1231(a)(5).

Although Respondents initially argued that Santamaria Orellana does not fall into either category, based on records submitted in response to the Court's post-hearing Order, the Court finds that Santamaria Orellana's removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), which applies to "all illegal reentrants." *Johnson v. Guzman Chavez*, 141 S. Ct. 2271, 2282 (2021). Specifically, Santamaria Orellana's Alien File includes a Notice of Intent/Decision to Reinstate Prior Order that includes a signed certification of a decision to remove Santamaria Orellana "through reinstatement of the prior order, in accordance with [8 U.S.C. § 1231(a)(5)]," executed on November 5, 2019, that demonstrates that the 2006 removal order was reinstated after he reentered the United States and was then apprehended by ICE in 2019. Reinstatement at 1, ECF No. 41-1. He is therefore subject to the requirements of 8 C.F.R. § 1208.31(g).

21

Under these provisions, when a noncitizen with a reinstated removal order expresses a fear of returning to the country of removal, a USCIS asylum officer determines whether the individual has a "reasonable fear of persecution or torture," and if the officer makes such a finding, the officer issues a "Notice of Referral to the Immigration Judge" for consideration of "withholding of removal only." 8 C.F.R. § 1208.31(e). If the asylum officer "determines that the alien has not established a reasonable fear of persecution or torture," the officer "shall inform the alien in writing of the decision and shall inquire whether the alien wishes to have an immigration judge review the negative decision." *Id.* § 1208.31(f). Upon the request of the noncitizen, the "negative decision regarding reasonable fear shall be subject to de novo review by an immigration judge." *Id.* § 1208.31(g). If the immigration judge concurs with the asylum officer's determination that the noncitizen does not have a reasonable fear of persecution or torture, the case is returned to DHS for removal of the noncitizen. *Id.* § 1208.31(g)(1). If the IJ finds that the noncitizen has a reasonable fear of persecution or torture, the noncitizen may submit an application for asylum and withholding of removal. *Id.* § 1208.31(g)(2).

Because an asylum officer has made a negative reasonable fear determination and Santamaria Orellana requested review of that decision, he is entitled to review of that determination by an IJ pursuant to the plain language of 8 C.F.R. § 1208.31(g). Respondents, however, are refusing to permit such review and instead have stated their intention to remove Santamaria Orellana summarily and without such review, upon the completion of the present proceedings, pursuant to a March 30, 2025 memorandum from Secretary of Homeland Security Kristi Noem entitled "Guidance Regarding Third Country Removals" ("the DHS Guidance Memorandum"). DHS Guidance Mem. at 1, Resp. Notice Ex. 5, ECF No. 31-5. The DHS Guidance Memorandum directs that if, based on a screening interview, "USCIS determines that

22

the alien has not met [the] standard" that the alien "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal . . . the alien will be removed." *Id.* at 2. The DHS Guidance Memorandum directs USCIS to refer the matter to an IJ only "[i]f USCIS determines that the alien has met this standard and the alien was not previously in proceedings before the Immigration Court." *Id.* If the noncitizen had previously had proceedings before the Immigration Court, the matter is to be referred to ICE, which may file a motion to reopen those proceedings or designate a different country for removal. *Id.* These provisions of the DHS Guidance Memorandum, however, directly conflict with 8 C.F.R. § 1208.31(g), which requires IJ review of a negative reasonable fear determination upon request.

Respondents contend that 8 C.F.R. § 1208.31 does not apply to Santamaria Orellana and assert that his potential removal to a third country is instead governed by 8 U.S.C. § 1231(b)(1) and 8 C.F.R. § 241.15. 8 U.S.C. § 1231(b) governs the countries to which a noncitizen may be removed. *See* 8 U.S.C. § 1231(b)(1) (specifying countries to which noncitizens "arriving at the United States" may be removed); 8 U.S.C. § 1231(b)(2) (specifying countries to which other noncitizens may be removed). Specifically, Respondents reference 8 U.S.C. § 1231(b)(1)(C)(iv), which applies to "aliens arriving at the United States" and provides that such individuals may be removed to a "country with a government that will accept the alien . . . if removal to other countries 'is impracticable, inadvisable, or impossible.'" Within 8 U.S.C. § 1231(b)(2), a comparable provision provides authority to remove other aliens to such a third country. *See* 8 U.S.C. § 1231(b)(2)(E)(vii). In turn, 8 C.F.R. § 241.15 includes seven provisions providing further guidance on the "Countries to which aliens may be removed," including, for example, on when acceptance of the alien by the country of removal is required, that the Secretary has discretion to remove an alien to any country described in 8 U.S.C. § 1231(b) "without regard to the nature or

existence of a government," and that the Secretary may designate a country of removal based on "the best interests of the United States." 8 C.F.R. § 241.15(a)–(f). By regulation, IJs and the BIA "have no jurisdiction to review any determinations" by DHS officers "under 8 C.F.R. 241.15." 8 C.F.R. § 1241.15.

These provisions, however, while applicable to the issue of the designation of a country of removal, do not relate to, or limit, the separate statutory restriction providing that "[n]otwithstanding [8 U.S.C. § 1231(b)(1) and (2)], the [Secretary] may not remove an alien to a country if the [Secretary] decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3). Where Santamaria Orellana's claim challenges not the selection of Mexico as a country of removal, but only the lack of sufficient process for a determination of whether his life or freedom would be threatened in that country, the provisions set forth in 8 U.S.C. § 1231(b)(1) and (2), 8 C.F.R. § 241.15, and 8 C.F.R. § 1241.15 are not inconsistent with Santamaria Orellana's claim, and this Court's finding, that 8 C.F.R. § 1208.31(g) applies to Santamaria Orellana and affords him the right to IJ review of his reasonable fear determination.

As discussed in the August 25, 2025 Memorandum Opinion, *see Santamaria Orellana*, 2025 WL 2444087, at *5, under the *Accardi* doctrine, an agency's "failure to afford an individual procedural safeguards required under its own regulations may result in the invalidation of the ultimate administrative determination" upon a showing of prejudice. *Morgan*, 193 F.3d at 266–67. Prejudice can be presumed when the regulations at issue consist of "an entire procedural framework, designed to insure the fair processing of an action affecting an individual." *Delgado-Corea v. Immigr. & Naturalization Serv.*, 804 F.2d 261, 263 (4th Cir. 1986) (approving of this

24

analysis); *Morgan*, 193 F.3d at 267 (same); *cf. Bowens v. N.C. Dep't of Hum. Res.*, 710 F.2d 1015, 1019 (4th Cir. 1983) ("An agency's violation of its regulations is not unconstitutional unless the regulations are necessary to afford due process."). Here, 8 C.F.R. § 1208.31(g) is plainly designed to provide due process protections for noncitizens who, like Santamaria Orellana, are seeking to avoid removal to a country for which they assert a reasonable fear of persecution or torture. Accordingly, the Court concludes that Santamaria Orellana is likely to succeed on his claim that the denial to him of IJ review as required by 8 C.F.R. § 1208.31(g) is a due process violation under the *Accardi* doctrine.

Finally, Respondents' invocation of the Supreme Court's stay of the preliminary injunction issued in *D.V.D. v. U.S. Department of Homeland Security*, 778 F. Supp. 3d 355 (D. Mass. 2025), does not alter this conclusion. In *D.V.D.*, the district court granted a preliminary injunction relating to a certified class of individuals who are presently subject to final orders of removal and who DHS "has deported or will deport on or after February 18, 2025, to a country (a) not previously designated as the country or alternative country of removal, and (b) not identified in writing in the prior proceedings as a country to which the individual would be removed." *Id.* at 378. The preliminary injunction required that prior to such a removal to a third country, DHS must "(1) provide written notice to the alien—and the alien's immigration counsel, if any—of the third country to which the alien may be removed, in a language the alien can understand; (2) provide meaningful opportunity for the alien to raise a fear of return for eligibility for CAT protections; (3) move to reopen the proceedings if the alien demonstrates 'reasonable fear'; and (4) if the alien is not found to have demonstrated 'reasonable fear,' provide meaningful opportunity, and a minimum of 15 days, for that alien to seek to move to reopen immigration proceedings to challenge the potential third-country removal." *Id.* at 392–93. The court granted this preliminary injunction

in part because it concluded that the plaintiffs were likely to succeed in showing that DHS's actions

pursuant to the March 30, 2025 DHS Guidance Memorandum deprived them of due process by

"executing third-country removals without providing notice and a meaningful opportunity to

present fear-based claims." *Id.* at 387.  On June 23, 2025, the Supreme Court stayed the

preliminary injunction pending disposition of the appeal to the United States Court of Appeals for

the First Circuit, but the Court provided no reasoning for its decision. *See Dep't of Homeland

Security v. D.V.D.*, 145 S. Ct. 2153, 2153 (2025) (summarily granting the stay); *Dep't of Homeland

Security v. D.V.D.*, 145 S. Ct. 2627, 2629 (2025) (clarifying that the preliminary injunction was

stayed in full).

     In opposing the Motion, Respondents argue that the Supreme Court's stay "resolved . . .

any doubt" about the legality and constitutionality of the DHS Guidance Memorandum, including

its failure to allow for IJ review of a USCIS asylum officer's negative reasonable fear

determination. Opp'n at 8.  Although this Court, like all federal courts, is bound by the decisions

of the Supreme Court, the lack of any analysis or reasoning underlying the stay prevents an

accurate assessment of the Supreme Court's determinations regarding any particular issue in that

case. As one district court presented with a similar argument found, the "Supreme Court did not

decide *D.V.D.* on the merits, nor did it even necessarily rule on the class's likelihood of success

on its due process and APA claims," and in the absence of any "explanation of its reasoning," the

court could not "ascertain from the Supreme Court's emergency order whether it found the

government likely to succeed on its jurisdictional or substantive claims." *Nguyen v. Scott*, ___ F.

Supp. 3d ___, No. 25-cv-01398, 2025 WL 2419288, at *22 (W.D. Wash. Aug. 21, 2025). This

Court agrees that based on the presently available guidance from the Supreme Court, there is an

insufficient basis upon which to reach a conclusion on which aspects of *D.V.D.* the Supreme Court has rejected, whether they relate to the class certification, the due process claim, or otherwise.

Furthermore, in the present case, Santamaria Orellana primarily relies on a different kind of due process claim than the one discussed in *D.V.D.*, which focused generally on whether under traditional principles of procedural due process, noncitizens subjected to a third-country removal are entitled to, and receive under the DHS Guidance Memorandum, notice and a meaningful opportunity to assert a claim that removal is improper based on a reasonable fear of persecution or torture before a removal can be effectuated. *See D.V.D.*, 778 F. Supp. 3d at 387–90. Here, however, Santamaria Orellana focuses on a due process argument based on the *Accardi* doctrine and the applicability of, but failure to comply with, the regulations in 8 C.F.R. § 1208.31. This argument was not squarely presented in *D.V.D.*, either at the district court or the Supreme Court, and neither court discussed the *Accardi* doctrine or analyzed the applicability of the procedural requirements specified in 8 C.F.R. § 1208.31(g) and at issue here. *See D.V.D.*, 778 F. Supp. 3d at 387–91; *D.V.D.*, 145 S. Ct. at 2153; *D.V.D.*, 145 S. Ct. at 2629–30. Under these circumstances, the Court cannot presently conclude that the Supreme Court's stay precludes Santamaria Orellana's argument and thus will not, based on that ruling, alter its conclusion that Santamaria Orellana is likely to succeed on the merits of its *Accardi* claim arising from the failure to comply with 8 C.F.R. § 1208.31(g). The Court is prepared to adjust its ruling if and when the Supreme Court provides specific guidance on the issues in this case, whether in relation to *D.V.D.* or otherwise.

Because the Court finds a likelihood of success on this claim, it need not and does not address Santamaria Orellana's separate claim that IJ review of his assertion of a reasonable fear of persecution or torture is generally required as a matter of due process.

27

### B.    Irreparable Harm

As to the second factor, Santamaria Orellana has met his burden of establishing a likelihood of irreparable harm in the absence of preliminary relief. Respondents have stated that in the absence of a TRO or injunction, they will imminently remove Santamaria Orellana to Mexico. In the related context of a stay during the pendency of a petition for review of a removal order, "removal alone cannot constitute the requisite irreparable injury" because individuals subject to removal could still pursue their petitions for review and potentially return later. *Nken*, 556 U.S. at 435. That principle may be outdated because the Government has now taken the position in some cases that when an individual is removed from the United States, the Government has no ability to arrange for his return. *See Abrego Garcia*, 777 F. Supp. 3d at 507, 512–13. Regardless, removal of a noncitizen to a place where the noncitizen faces "risk of torture, beatings, and even death clearly and unequivocally supports a finding of irreparable harm." *Id.* at 518 (quoting *J.G.G. v. Trump*, 772 F. Supp. 3d 18, 42 (D.D.C. 2025)); *Leiva-Perez v. Holder*, 640 F.3d 962, 969–70 (9th Cir. 2011) (holding that where a noncitizen had credibly testified that he was targeted for extortion and beatings if he returned to El Salvador, he was likely to suffer irreparable harm if removed there).

Here, an immigration judge has already concluded, in the withholding-only proceedings in 2023, that Santamaria Orellana would more likely than not be subjected to torture with the acquiescence of a public official if removed to El Salvador. IJ Order at 1, Ans. Ex. 1, ECF No. 11-1; Santamaria Orellana Aff. ¶ 8, Reply Ex. 1, ECF No. 12-1. In turn, Santamaria Orellana has asserted, and Respondents have not disputed, that if sent to Mexico, he faces likely removal from Mexico to El Salvador. Santamaria Orellana Aff. ¶ 12. This assertion is supported by the facts that Santamaria Orellana undisputedly has no claim to legal immigration status in Mexico, *id.* ¶

28

11, and that when Santamaria Orellana previously fled from El Salvador to Mexico after facing death threats from Salvadoran gangs, Mexican immigration officials detained him and deported him back to El Salvador. *Santamaria Orellana*, 2025 WL 2444087, at *1; Santamaria Orellana Aff. ¶ 4. Respondents have provided no evidence to show that the result would be any different the next time he is found in Mexico.

Indeed, in several recent third-country removals, the third country promptly deported noncitizens to the very countries to which the United States had withheld removal due to the risk of persecution, torture, or death. *See, e.g.*, *D.A. v. Noem*, No. 25-CV-3135 (TSC), 2025 WL 2646888, at *2-3 (D.D.C. Sept. 15, 2025) (describing Ghana's deportation of individuals to their countries of origin, for which the individuals held withholding-of-removal orders). In one such instance in 2025, a noncitizen who had been granted withholding of removal to his home country of Guatemala based on a fear of torture was instead deported to Mexico, only to be deported from Mexico to Guatemala. *See id.* at *3 (citing *Dep't of Homeland Security v. D.V.D.*, 145 S. Ct. 2153, 2154–55 (2025) (Sotomayor, J., dissenting)). Significantly, even when the country of removal has provided assurances that it will not repatriate the noncitizen to his home country where he faced torture, the Secretary of Homeland Security has taken the position that following such a removal, the United States has no ability to prevent such repatriation. *D.A.*, 2025 WL 2646888, at *2.

In light of the finding that Santamaria Orellana faces persecution or torture in El Salvador, his own prior experience of deportation from Mexico to El Salvador, and the recent history of individuals removed to third countries being promptly returned to their home countries even when facing torture there, the Court finds that Santamaria Orellana has demonstrated a likelihood of irreparable harm absent a preliminary injunction. *See Vitkus v. Blinken*, 79 F.4th 352, 355–56, 367 (4th Cir. 2023) (finding likely irreparable harm where a petition for a writ of habeas corpus would

29

be mooted upon the execution of extradition to Lithuania, a country in which the petitioner had previously faced torture by the police).

## C.    Balance of the Equities and Public Interest

The remaining requirements for a preliminary injunction are that the balance of equities tips in the moving party's favor, and that an injunction is in the public interest. *See Winter*, 555 U.S. at 20. When one party is the Government, these two factors merge and are properly considered together. *Nken*, 556 U.S. at 435. The public has an interest in the prompt execution of removal orders, but it also has an interest in preventing noncitizens from being wrongfully removed, *id.* at 436, particularly when they may face torture or persecution after removal. *See Leiva-Perez*, 640 F.3d at 971. Here, where Santamaria Orellana has resided in the United States for over 17 years without incident, and he has complied with all conditions of release such as checking in with ICE, the limited harm to the public interest that could arise from allowing him to remain in the United States for the short period of time needed to allow for full adjudication of his legal claims is outweighed by the potential harm to him that could arise if his removal results in his return to a country where he will be persecuted or tortured. Furthermore, the public "undoubtedly has an interest in seeing its governmental institutions follow the law." *Vitkus*, 79 F.4th at 368 (quoting *Roe v. Dep't of Defense*, 947 F.3d 207, 231 (4th Cir. 2020)). Where Santamaria Orellana has advanced a strong argument that Respondents have failed to provide the legal protections set forth in existing law, specifically IJ review of his claim, these factors further weigh in favor of an injunction. Accordingly, the Court finds that the balance of equities and the public interest favor the granting of a preliminary injunction.

Where all four *Winter* factors favor relief, the Court will grant the requested preliminary injunction.

## CONCLUSION

For the foregoing reasons, the Motion for a Preliminary Injunction will be GRANTED.  A separate Order and a separate Preliminary Injunction shall issue.

Date:  October 7, 2025

THEODORE D. CHUANG
United States District Judge

31